E. S. FRISCHKORN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7879.   Promulgated June 20, 1927.

1. Where the Commissioner in his 60-day letter has designated a certain transaction a sale but where upon the hearing it is shown that it was an exchange, and where petitioner has suffered no surprise it is the duty and province of the Board of Tax Appeals to disregard the terminology and determine the correct deficiency, if any.

2. The value of shares of stock in certain corporations determined.

3. A claim for deduction of certain amounts as interest paid disallowed because not proven.

4. A claim for a deduction of money expended for traveling expenses incident to petitioner's business disallowed because not proven.

5. A claim for a deduction of certain worthless debts denied because petitioner did not prove that he first ascertained them to be worthless in the taxable year.

*J. H. Amick, C. P. A.*, and *Elmer J. Binford, Esq.*, for the petitioner.

*C. H. Curl, Esq.*, for the respondent.

This is a proceeding for redetermination of deficiencies in income taxes for the years 1919, 1920, and 1921 in the total amount of $65,032.53. These deficiencies arise by reason of: (1) Inclusion by the respondent in petitioner's gross income for the year 1919, the sum of $80,342, alleged to be the profit realized from a transaction involving the transfer of certain real estate by petitioner to the Frischkorn Development Co., (2) refusal of respondent to allow a deduction from gross income for 1919 of $1,922.69, representing expenses alleged to have been incurred by petitioner in the maintenance and operation of an automobile for business purposes, (3) inclusion by the respondent in petitioner's gross income for 1920 of the sum of $62,000 alleged to be profit arising from the transfer of certain real estate to the Frischkorn Homes Co., (4) refusal of respondent to allow as deduction from petitioner's gross income for 1920, interest paid during the year in the sum of $2,585.19, (5) refusal of respondent to allow a deduction from petitioner's gross income for 1920 for traveling expense in the sum of $1,825, (6) refusal of respondent to allow as a deduction in taxpayer's income for 1921, expenses incurred by taxpayer for traveling and entertainment for business purposes in the sum of $4,020.97, (7) refusal of respondent to allow as a deduction from taxpayer's gross income for the year 1921, a loss sustained in the disposition of an automobile in the sum of $218, and the sale of horses in the sum of $494, and (8) refusal of the respondent to allow as a deduction from taxpayer's gross income for the year 1921, losses incurred on account of bad debts in the sum of $3,002.

The petitioner withdrew at the hearing item numbered 7, and in brief filed by its counsel, waives error concerning item 2.

### FINDINGS OF FACT.

The petitioner is an individual, residing at Detroit, Mich. He has assisted in the organization of many corporations, which he and

those associated with him used as instrumentalities for the purchase, improvement, and sale of real estate. Among these corporations are the Frischkorn Real Estate Co., the Frischkorn Development Co., the Frischkorn Homes Co., the Dunbar Realty Co., the Faunce Realty Co., and the Frischkorn Construction Co.

In the early part of May, 1919, the petitioner, together with W. B. Faunce, W. J. Davie, Fred Warner, Sam Pfau, George M. Frischkorn and others, procured the incorporation under the laws of Delaware of the Frischkorn Development Co. The specific purpose for which this corporation was organized, was the acquisition, improvement and sale of real estate. It was understood that Faunce, Warner, Davie, and the other associates of petitioner were to advance the money with which to acquire real estate; that the petitioner was to furnish his valuable services both in the acquisition and the disposition of the real estate, but was to contribute no money; that the real estate to be purchased was to be acquired in the name of one of the associates and by him conveyed to the corporation; that the associates were to be reimbursed in stock, or stock and cash, and the stock was to be apportioned among the members of the group, and a certain number of shares were to be transferred to petitioner and his brother, George M. Frischkorn, for the consideration above mentioned.

Under its charter as amended, the Frischkorn Development Co. had an authorized capital stock of 1,500 shares of common stock without nominal or par value and $150,000 of preferred stock divided into 1,500 shares of the par value of $100 each. The common stock was given as a bonus with the purchase of the shares of preferred stock. The common stock had no value.

The preferred stock · issued by the corporation, carried a fixed, yearly, cumulative dividend of 7 per cent, but no more, payable before any dividends were set apart or paid on the common stock. The preferred stock certificates contained the following provision:

The holders of preferred stock shall, in case of liquidation or dissolution of the company, be entitled to be paid in full both the principal of their shares and the accrued dividends charged before any amount shall be paid to the holders of the general or common stock. The holders of preferred stock shall not be entitled to vote.

The said preferred stock, or any part thereof, may at the option of the board of directors be redeemed at One Hundred and Five Dollars ($105.00) per share, together with all accrued dividends, at any dividend paying period.

On May 13, 1919, the petitioner acquired for the benefit of himself and his associates, two tracts of land in Dearborn Township, Wayne County, Michigan. The consideration paid for this land was $76,938, of which $31,938 was paid in cash, and for the remainder of

$45,000 purchase-money mortgages were issued. No part of the cash consideration was paid by the petitioner out of his own funds. The first meeting of the stockholders of the company was held on the 27th day of May, 1919. The petitioner presented to the stockholders an offer to sell the corporation the said two tracts of land subject to the two mortgages aggregating $45,000, and to accept in payment, 630 shares of the preferred stock of the company and 630 shares of the common stock. By proper resolution, the stockholders advised the directors to accept the proposition. The first meeting of the board of directors was held on the 9th day of June, 1919, and a resolution was then adopted to accept the offer of petitioner, and directed that there be delivered to the petitioner, his nominee or assigns, 630 shares of preferred stock and 630 shares of common stock. On May 27, 1919, the Frischkorn Development Co. issued to E. S. Frischkorn its stock certificates, Nos. 1, 2, 3, and 4, for a total of 630 shares of its preferred stock. The stubs of these certificates Nos. 1, 2, 3, and 4 recite that the stock issued was treasury stock and each bears canceled documentary revenue stamps to the value of 5 cents for each share issued. Thereafter, beginning on June 12, 1919, and continuing through June 16, 1919, the petitioner transferred to his associates all the 630 shares. The stub of each certificate so transferred, bears canceled documentary revenue stamps at the value of 2 cents per share.

On the 29th day of May, 1919, the petitioner acquired out of the funds contributed by his associates, a tract of land in the County of Wayne, State of Michigan. The consideration paid for this tract of land was $60,000, of which $20,000 was paid in cash and for the remainder a purchase-money mortgage was executed. At a meeting of the board of directors of the company, held on the 10th day of June, 1919, the petitioner proposed to convey this property to the corporation in consideration of the assumption by it of the mortgage and 320 shares of preferred stock of the company. By a proper resolution, the offer was accepted. On June 14, 1919, the corporation issued to the petitioner its certificate No. 24, for the 320 shares of the preferred stock. The stub of this certificate shows that it was an original issue and it bears canceled documentary revenue stamps in a total amount equal to 5 cents for each share issued. Beginning with June 14, 1919, petitioner again transferred this stock to his associates with the result that after having made all transfers required by the agreement between him and his associates, he remained the owner of 81½ shares of the preferred stock. The stub of each certificate so transferred bears canceled documentary revenue stamps at the value of 2 cents per share.

The total number of shares of preferred stock issued by the corporation in pursuance of the resolutions of the board of directors, adopted June 9 and June 10, 1919, was 950 shares, and the total cost of the property in money to the petitioner's associates, for all of said land, was $51,938. The value of each share of preferred stock, at the time of issue, was $37.26.

Previous to October 25, 1919, the petitioner had acquired with money contributed solely by his associates, certain parcels of land in Wayne County, Michigan. The land was acquired by him for a total consideration of $79,120, of which $35,400 was paid in cash and the remainder, $43,720, was represented by purchase-money mortgages. At a meeting of the board of directors of the corporation, held on the 25th day of October, 1919, the petitioner proposed to sell to the corporation, the above tract of land subject to the mortgages of record, in consideration of 550 shares of the preferred stock and 550 shares of the common stock and $17,680 in cash. By a proper resolution, this offer was accepted by the board of directors and an issue of 550 shares of preferred capital stock was directed to be delivered to the petitioner. The minutes contain the following:

The Treasurer of the Company was then instructed to pay Mr. E. S. Frischkorn the $17,680.00 from the Treasury of the Company.

The corporation paid the petitioner the $17,680 above referred to, and on October 27, 1919, it issued to him certificate No. 40 for 550 shares of preferred stock of the company. On the stub of this certificate are canceled documentary revenue stamps in a total amount equal to 5 cents for each share issued. On November 1, 1919, the petitioner transferred the 550 shares to W. B. Faunce. W. B. Faunce thereupon transferred the stock to his associates, including the petitioner, who became the owner of 95 shares of stock. The stub of each certificate so transferred bears canceled documentary revenue stamps at the value of 2 cents per share. The value of the 95 shares of preferred stock of the Frischkorn Development Co., which were received by the petitioner in consideration of his services thereafter to be rendered, was $100 per share. The total gain made by the petitioner in this transaction was $9,500, plus $17,680, the cash received by him from the company.

In the summer of 1920, the petitioner, his brothers Charles R. Frischkorn and George M. Frischkorn, and W. J. Davie entered into an agreement to enter into contracts for the purchase of certain parcels of ground, hereinafter described. During the months of June and August, 1920, W. J. Davie advanced to petitioner $30,000 to be applied upon the purchase price. During the same months, Charles R. Frischkorn advanced to his brother, $5,000, for the same pur-

pose and petitioner contributed $13,000. George M. Frischkorn paid nothing.

On the 13th day of August, 1920, petitioner entered into a contract for the purchase from one Mende of the following described land in Wayne County, Michigan: Easterly 30 acres of the east half of west half of the northwest quarter, section 11, township 2 south, range 10 east. The consideration for the agreement to purchase was $70,000, of which $10,000 was paid in cash and the remaining $60,000 was to be paid in equal annual installments of $10,000 each, until the whole amount was paid. The petitioner agreed to subdivide the property and sell it in lots and Mende agreed to enter into conveyances of the lots upon payment to him out of the purchase price, a sum of money at the rate of $4,000 per acre.

On the same day, petitioner entered into an agreement with Emile Chevillot and his wife, for the purchase of the following described property in Wayne County, Michigan: North 20 acres of the west 40 acres of the east half of the northwest quarter of section 11, township 2 south, range 10 east, and the west half of the southeast quarter of the northwest quarter of section 11, township 2 south, range 10 east. The consideration for this contract of sale was $92,000, of which $18,000 was paid in cash and the remaining $74,000 was to be paid in sums of $12,000 each year thereafter. The contract contained covenants as to subdivision and payment similar to those in the contract with Mende.

On the 12th day of August, 1920, petitioner entered into a contract with Henry Bender and his wife for the purchase of the following described property in Wayne County, Michigan: West half of the west half of the northwest quarter of the west 10 acres of the east half of the west half of the northwest quarter, section 11, township 2 south, range 10 east. The consideration for this purchase was $100,000 of which $20,000 was paid in cash and the remainder to be paid as follows: $2,500 on or before one year after date, $2,500 on or before two years after date, $25,000 on or before three years after date, $25,000 on or before four years after date, and $25,000 on or before five years after date. The contract contained covenants as to subdivision and payment similar to those in the Mende contract.

For the purpose of subdividing and selling the above described properties, the petitioner, George M. Frischkorn, W. J. Davie, R. H. Menders and Frank Renaud organized a corporation, under the laws of Delaware, under the name of Frischkorn Homes Co. The organization of this company was perfected as of the 24th day of August, 1920. This company had an authorized capital stock of $150,000 preferred stock, divided into 1,500 shares of the par value

of $100 each, and 1,500 shares of common stock without nominal or par value.  The preferred stock certificates contained the following provision:

The holders of preferred stock shall, in case of liquidation or dissolution of the company, be entitled to be paid in full both the principal of their shares and the accrued dividends charged before any amount shall be paid to the holders of the general or common stock.

The said preferred stock, or any part thereof, may at the discretion of the Company be redeemed at par, together with all accrued dividends, on August 15th, 1921, or any dividend day thereafter.

The common stock had no value.  At a directors' meeting held on August 30, 1920, petitioner offered to transfer the above contracts of sale to the Frischkorn Homes Co. in consideration of the issue by that company to him and his nominees of 1,100 shares of preferred stock and 1,100 shares of common stock of the company.  On the same day, August 30, 1920, the corporation issued to the petitioner a certificate of stock, No. 1, for 1,100 shares of the preferred stock. Thereafter, on September 30, 1920, petitioner transferred 50 shares of the preferred stock out of his certificate for 1,100 shares to Charles R. Frischkorn.  On the same day, he transferred 70 shares of his 1,100 shares to his brother, George M. Frischkorn.  For this stock, George M. Frischkorn paid nothing at any time.  On September 13, 1920, petitioner transferred 296 shares of his 1,100 shares to W. J. Davie, and on the 16th day of December, 1920, he transferred 4 shares of the said stock to W. J. Davie.  W. J. Davie was also a subscriber to 4 shares of stock at the inception of the corporation.

The value of each share of preferred stock issued to petitioner was $43.63.  After the transfer of the stock to George M. Frischkorn, Charles R. Frischkorn and W. J. Davie, there remained in petitioner's possession 680 shares of the preferred stock.  W. J. Davie was active sales manager for the various Frischkorn enterprises and expected to derive a large amount of remuneration from the sales of property controlled by the Frischkorn Homes Co.  George M. Frischkorn and petitioner were experienced realtors.  Their long experience was, in the judgment of their stockholders, such as to justify their preference in the issuance of the stock.  The lands acquired by the above contracts, were the only properties ever owned or controlled by Frischkorn Homes Co. during the existence of the corporation.

OPINION.

MILLIKEN: Petitioner contends that since the respondent in his 60-day notice, which is the basis of this proceeding, refers to the transactions involving the conveyances of real estate to the Frischkorn Development Co. and the Frischkorn Homes Co. as " sales,"

he can not be taxed on profits arising therefrom unless it be shown that these transactions were in fact sales in the technical sense of that term, and even though these transactions were in fact exchanges, he should now escape all taxation on gain realized from what was an exchange rather than a sale. This Board was not created for the sole purpose of reviewing rulings made by the respondent, but was created for a broader purpose, i. e., of determining the correctness of deficiencies in tax found by the respondent. When all the facts of record conclusively prove a transaction to be an exchange rather than a sale, it is our duty to pass upon the question of law and fact thus raised, with its consequent effect on the taxability or nontaxability of the transaction. In his petition in this proceeding, petitioner not only raises the question of the taxability of the exchange, but quotes as the law of his case, section 202 (b) of the Revenue Act of 1918, and article 1566 of Regulations 45, as amended by T. D. 2924, all of which refer to exchanges. The testimony taken by him before the date of the hearing was largely addressed to the question of gain arising from the exchange of the various pieces of property for the stock of the corporations. The petitioner has not been misled. There is no merit in this contention.

At the hearing, the auditor of the Frischkorn Development Co. testified that the certificates for 630 shares of the preferred stock of the company issued on May 27, 1919, were never in fact issued to the petitioner; that the word " canceled " written across the face of each certificate indicates that these certificates were void and that they were in fact void. The witness stated that these certificates were issued in his absence and that as soon as he returned to the office, he marked them canceled, in order to show that they were void. He further testifies that the word " canceled " written in red ink across the face of the certificates issued June 14, 1919, and October 27, 1919, to petitioner, for 320 and 550 shares, respectively, indicates that they too were void. There is no testimony that the auditor was absent when these last-mentioned certificates were issued. The fact is that the corporation pursued the same method in the case of the purchase of every piece of real estate which it acquired. The stock certificate book of the corporation shows that each of the certificates issued to petitioner was stamped with the amount of documentary revenue stamps required by section 1107 (3) of the Revenue Act of 1918, for original issues of stock, and that all the other stubs of certificates were stamped at the rate required by section 1107 (4) of said Act, for transfers of stock. The stubs of each of these certificates show that the issue was from treasury stock. Every other certificate can be traced back, not to treasury stock, but to one of these original issues. We, therefore, reject the testimony of the auditor on this point, and accept that of petitioner, who testified:

Q. Were the 1,500 shares of stock of the Frischkorn Development Company, the certificates of which were written out to you, were they ever actually owned by you, and were they delivered to you?

A. No, they were simply issued to me for the purpose of making proper transfers. They were never even torn out of the book, as you will notice. Then the stock to my partners in the deal, was issued to them.

Q. Do you mean that the original certificates which were made out to you, were canceled, and other certificates made out to the interested parties?

A. Yes, that is it.

It thus appears that the preferred stock of the Frischkorn Development Co. was first issued to petitioner and then by him transferred to his associates in compliance with the terms of a previous agreement between them.

The testimony introduced at the hearing, shows that petitioner and certain others, including W. B. Faunce, Fred Warner, and W. J. Davie, entered into an agreement to purchase the properties which were conveyed to the Frischkorn Development Co. out of moneys advanced by them. The testimony does not show how much any one contributed to the enterprises, except that F. W. Warner testified that he advanced over $25,000. Petitioner introduced no testimony to the effect that he advanced any amount. On the contrary, his brother, George M. Frischkorn, testified:

Q. Was it because of the fact that these other stockholders were looking to you and to Mr. E. S. Frischkorn largely for the success of the business, that you and Mr. E. S. Frischkorn were able to secure an interest in the Frischkorn Development Company without cost to yourselves?

A. Yes.

It is thus shown that petitioner paid nothing for his preferred stock in the Frischkorn Development Co. in the way of cash or property, and that the only consideration for the transfer of the 81½ shares of preferred stock, which he received out of the first two transactions, and the 95 shares of stock which he received out of the third set of transactions, was the services he was to render in the future. He was thus paid for his services in advance.

We have determined a value for the 81½ shares of stock, in the light of all the evidence to be $37.26 per share, and the petitioner thus realized income in the sum of $3,036.69.

We are of the opinion that the 550 shares of preferred stock issued on October 27, 1919, had a value equal to the par value thereof. The corporation had been actively engaged in business for about five months. It had been successful, as shown by the fact that about four months later it not only declared a dividend on its preferred stock, but that it had a surplus sufficient to enable it to begin to redeem such stock at 105 cents on the dollar, and that it did on that date begin to redeem such stock at that rate. The respondent has found that the stock was worth par. The burden is on the petitioner

to show that the respondent erred and he has introduced no testimony whatever on this point. We hold, therefore, that the 95 shares of stock issued to the petitioner out of the 550 shares of stock issued on October 27, 1919, were worth $9,500. The record shows that the petitioner, in addition to these 95 shares of stock, received $17,680 in cash, making a total gain in this transaction of $27,180.

We have had much difficulty in unraveling the confused mass of evidence which has been adduced by the petitioner with reference to his transactions with the Frischkorn Homes Co. On all the facts as presented by the record, we are convinced that W. J. Davie and Charles R. Frischkorn did not purchase the shares of stock in this company which stand in their names, from the company, but that they acquired them by reason of entering into an agreement with petitioner prior to the organization of the corporation to acquire the contracts of purchase which were afterwards transferred to the corporation. In other words, these persons acquired their shares of stock by reason of their respective interests in the contracts transferred. This contention is borne out by the excerpt from petitioner's cash book and journal, filed by the auditor. This excerpt showed that W. J. Davie paid to the petitioner $5,000 on June 30, 1920; $13,000 on August 11, 1920; $10,000 on August 18, 1920; and $2,000 on August 30, 1920, making a total of payments to the petitioner by Davie of $30,000, all but $2,000 of which was paid to petitioner before the corporation was fully organized and before any stock was issued. This same excerpt shows that Charles R. Frischkorn paid to petitioner $5,000 on August 13, 1920. These are all the payments that the record discloses were made by any one to the petitioner in these transactions. George M. Frischkorn testified that he paid nothing.

The only persons whom the record discloses to have been active in securing the contracts of purchase which were afterward transferred to the Frischkorn Homes Co., were petitioner and his brothers, Charles R. Frischkorn and George M. Frischkorn, and W. J. Davie. It is true that George M. Frischkorn testified that perhaps Guy W. Ellis was interested. However, the stock book of the company discloses that Ellis did not acquire any stock in the company until December 31, 1921, or a year and four months after the transaction took place. This eliminates him. The cash consideration paid for these contracts by these four persons, amounted to $48,000. Of this amount, George M. Frischkorn paid nothing, Charles R. Frischkorn contributed $5,000, and W. J. Davie contributed $30,000. It is thus shown that petitioner contributed $13,000.

After the petitioner received the 1,100 shares of preferred stock, he transferred first and last 300 shares to W. J. Davie, 50 shares to Charles R. Frischkorn, and 70 shares to George M. Frischkorn. These were the only transfers which he made to those who were interested

with him in the purchase of the contracts. No other transfer can be regarded as a transfer to a person interested in the purchase, since there is no evidence in the record to that effect. After deducting the shares transferred to his brothers and to Davie, there were left in petitioner's hands 680 shares, and the difference between the value of these shares, as above indicated, and the $13,000 found to have been contributed by petitioner toward the purchase of the contracts, is gain to him for the year 1920.

The action of respondent in refusing to permit the petitioner to deduct from his return for 1920, an item of $2,585.19, claimed to have been paid as interest, is approved, since there is no evidence in the record indicating that the petitioner paid such interest, or any part thereof. Petitioner claims, in his brief filed in this proceeding, that his cash book and journal which was introduced as evidence at the hearing, discloses items of interest paid by him during the year 1920. While it is true that the cash book and journal was introduced in evidence by the auditor, his testimony does not indicate that the book contained items showing interest paid by the petitioner during the taxable year. The petitioner, with the consent of respondent, secured the right to withdraw this exhibit and substitute in its place, photostat copies of so much thereof as they deemed pertinent to the questions in issue. Petitioner availed himself of this privilege and filed a photostat copy of certain portions of the book, but this photostat copy contains no items which in any way relate to interest.

Petitioner urges that respondent erred in refusing to permit him to take as deductions from gross income for the years 1920 and 1921, certain expenses incurred in those years in traveling and entertaining in pursuit of his business. The only testimony introduced by the petitioner, with respect to traveling expenses, is that of himself and his auditor. The petitioner, in his depositions, makes the following statement:

Q. Did you, or did you not, expend any moneys for traveling or entertaining during the year 1920, in connection with your business affairs?

A. Yes, I did. I expended a great deal in traveling in the interest of the Company, and also in entertaining, maintaining automobiles for clients and our general business.

He further testified:

Q. Is it your opinion that your books for 1920 will correctly show the amount you expended for this purpose—for expenses?

A. No, I never turned in any expense account.

Q. In your opinion, Mr. Frischkorn, the amounts that may be entered on your books, as having been expended for traveling and entertaining, in that year (1920), is it your opinion that you actually expended that much money?

A. Yes, and I spent more than that. Amounts set aside for expenses by no means cover my expenses during those years.

Q. Did the same conditions prevail during 1921, in regard to traveling and entertaining expenses?

A. Yes.

No books of account have been produced which contain any entries relative to traveling and entertainment expenses. The auditor produced at the hearing 4 checks, amounting in all to $775, which were issued during the year 1920 and 35 checks issued in 1921, amounting in all to $3,741.50. These checks are petitioner's personal checks and many of them are drawn in favor of the Frischkorn Real Estate Co. It is not shown by any competent evidence for what purpose these checks were used. The only person who could testify to that effect is petitioner himself and he has given no such testimony. Further, the petitioner has failed to prove that the traveling was done in pursuit of his own business rather than that of the corporations with which he was connected, and if for the business of the corporations, whether he was to be reimbursed or not. In fact, he has not shown that during these years he was engaged in any private business, other than for his corporations. On the evidence of record, we sustain the action of respondent in disallowing these deductions. *Appeal of Barnett Weiss*, 3 B. T. A. 228; *Appeal of Sam Israel*, 3 B. T. A. 663; *Appeal of Franklin M. Magill*, 4 B. T. A. 272.

The petitioner's last claim is that the respondent erred in refusing to permit him to deduct as worthless debts, the following: Debt of George W. Stewart for $1,350; debt of P. J. Moran, $52, and debt of H. F. Baker, $1,600, which he alleges were found to be worthless and charged off in the year 1921. Although petitioner has proven that these debts were worthless and were charged off in 1921, he has introduced no evidence whatever as to when he first ascertained them to be worthless. The petitioner has, therefore, failed to produce the proof required by section 214(a)(7) of the Revenue Acts of 1918 and 1921, and the action of respondent in denying these deductions is sustained.

*Judgment will be entered on 15 days' notice, under Rule 50.*